**MICHAEL SCHIAVONE & SONS, INC.,**
**Plaintiff,**

v.

**GALLAND–HENNING MFG. CO.,**
**Defendant.**

**Civ. No. 11493.**

United States District Court
D. Connecticut.

Feb. 1, 1967.

Frank E. Callahan, Wiggin & Dana, New Haven, Conn., for plaintiff.

William J. Cousins, Cousins, Dooley & Barnston, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

The issue raised by plaintiff's motion for partial summary judgment is whether the defendant is constitutionally amenable to service of process under Connecticut's "long-arm" statute. Conn. Gen.Stat. § 33–411.

The plaintiff is a Connecticut corporation engaged in the scrap iron business. The defendant is a manufacturer of machinery with its principal place of business located at Milwaukee, Wisconsin. In this state, the defendant has no office, property, distributor, agents, or employees.

In February, 1964 the plaintiff contacted the defendant by mail to inquire about the purchase of a special scrap bailing press. The defendant acknowledged the letter and sent its representative to Connecticut to discuss the sale with officers of the plaintiff. Following preliminary negotiations, a contract of sale dated March 18, 1964 was prepared by the defendant and forwarded to the plaintiff for signature. On April 13, 1964, the plaintiff's vice-president signed the contract and returned it to the defendant with the requisite deposit of $8700. The defendant's president endorsed the contract on May 7, 1964 as an "order accepted" and simultaneously prepared and executed an "Amendment To Contract Dated March 18, 1964." Both documents were sent back to the plaintiff. On May 15, 1964, the plaintiff's vice-president signed the amendment and returned the now fully executed agreements to the defendant.

Following delivery of the press in September, 1965, representatives of the defendant on numerous occasions came into Connecticut to test the machine and to supervise its operation. The plaintiff has paid $126,575.40 toward the purchase price of the press.

When the bailing machine allegedly failed to function as warranted by the defendant, the plaintiff instituted this breach of contract action seeking damages and reimbursement of its payments. As a special defense the defendant contends it is not subject to the jurisdiction of this Court.

Sections 33–411(c) (1) and 33–411(c) (3) of Connecticut's long-arm statute subject a foreign corporation to suit in the state "on any cause of action arising as follows:

1) Out of any contract made in this state or to be performed in this state; or

3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers."

Reviewing, as we must, the relevant state court rulings, Arrowsmith v. United Press International, 320 F.2d 219, 223, 6 A.L.R.3d 1072 (2 Cir. 1963), it is clear that transactions such as the one in question were intended to be within the broad reaches of the Connecticut statute. See, for example, Horn Construction, Inc. v. Stran-Steel Corporation, 26 Conn.Sup. 201, 216 A.2d 833 (1965); Sheridan v. Cadet Chemical Corp., 25 Conn.Sup. 17, 195 A.2d 766 (1963). The defendant contends, however, that an application of the long-arm statute under the circumstances here would violate the due process clause of the Fourteenth Amendment.

There is no precise test as to the corporate activities which will bring a foreign corporation within the jurisdiction of the court. The standard of jurisdictional due process that must be applied to the facts in each case is whether the defendant has had "certain minimum contacts" with the state of the forum, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). See, also, McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Treating the contract with the plaintiff as merely a single, isolated transaction, the defendant claims the Supreme Court's minimum contacts standard has not been met. Erlanger Mills v. Cohoes Fibre Mills, 239 F.2d 502 (4 Cir. 1956). This argument, however, ignores all the events that occurred prior to and subsequent to the formal execution of the contract documents. In February, 1964, the defendant's representative came into the state and successfully solicited business for the defendant. Vital legal acts for the formation of the contract were performed in this state. The defendant manufactured the goods to be used in this state and placed them into the stream of commerce for delivery here. On numerous occasions, the defendant's employees were in Connecticut to supervise installation, testing, and operation of the machine. These activities, among others, constitute a continuing related series of contacts with this state sufficient to provide the necessary nexus between the defendant and Connecticut to sustain the extraterritorial service of process in this suit. Horn Construction, Inc. v. Stran-Steel Corporation, supra; Moore-McCormack Lines, Inc. v. Bunge Corporation, 307 F.2d 910 (4 Cir. 1962); Waukesha Building Corporation v. Jameson, 246 F.Supp. 183 (W.D. Ark.1965); Donnelly v. Mooney Air-

craft, Inc., 251 F.Supp. 720 (W.D.Tex. 1966). Cf. Buckley v. New York Post Corporation, 373 F.2d 175 (2 Cir., decided January 10, 1967).

Accordingly, the plaintiff's motion for partial summary judgment is granted.