Nathan **SCHER** d/b/a Natsin's, Plaintiff,

v.

**HMH PUBLISHING CO.,** Inc. d/b/a Playboy, Defendant.

Civ. No. 12381.

United States District Court
D. Connecticut.

Sept. 19, 1968.

Theodore I. Koskoff and Mitchell Fenton, of Koskoff & McGrath, Bridgeport, Conn., for plaintiff.

John W. Barnett, William J. Doyle and Joseph I. Lieberman, of Wiggin & Dana, New Haven, Conn., for defendant.

TIMBERS, Chief Judge.

### QUESTION PRESENTED

Defendant's motion to dismiss, pursuant to Rule 12(b)(2), Fed.R.Civ.P., for lack of in personam jurisdiction in this diversity action for breach of contract, presents the question as to whether defendant's contacts with the State of Connecticut are so minimal as to render application of Connecticut's long-arm statute, Conn.Gen.Stat. § 33–411, upon the facts of this case, violative of constitutional due process requirements.

The Court holds that it has in personam jurisdiction over defendant. Its motion to dismiss, accordingly, is denied.

## FACTS

The facts are not in dispute. Plaintiff Nathan Scher is a Connecticut citizen; he owns a men's clothing store, called Natsin's, in Bridgeport. Defendant is a Delaware corporation with its principal place of business in Chicago, Illinois; it is chiefly known for its publication of Playboy Magazine.

One of defendant's activities is the conducting of "Playmate Promotions."[1] A "Playmate Promotion" centers upon the appearance of one of those attractive young ladies called "Playmates" or "Bunnies" at a retailer's business establishment for the purpose of attracting large numbers of people to the establishment and thereby increasing the merchant's sales. In addition to supplying the "Playmate", defendant also furnishes the retailer with publicity posters, rabbit strip streamers, balloons, paper rabbit ears, and other promotional aids. Naturally all this is in return for a fee from the retailer.

Plaintiff contacted defendant in Chicago concerning the possibility of such a promotion for his store on or about July 10, 1967, having learned of the service from reading Playboy Magazine. The following day, defendant sent plaintiff a letter with detailed information and a copy of an agreement form. On July 15, 1967 defendant spoke with plaintiff by telephone; that same day plaintiff sent the completed form and a $136.50 check to defendant in Chicago. Under the agreement reached by the parties, defendant was to arrange for the appearance of Miss Surry Marshe at plaintiff's store on September 16, 1967 and to send various promotional materials to plaintiff. The sum of $136.50 paid to defendant by plaintiff consisted of $106.50 for the fee and transportation of the "Playmate" and $30.00 for the promotional materials. The promotional materials were sent to plaintiff about August 2, 1967, but Miss Marshe failed to appear at the appointed time and place. Plaintiff sues in the instant action to recover damages for alleged breach of the agreement.

While defendant admits that the contract was to be performed in Connecticut, and therefore Conn.Gen.Stat. § 33–411 (c)(1) purportedly makes defendant amenable to suit in the state, defendant contends that its contacts with the state are so minimal that application of the statute would violate constitutional due process requirements.

Defendant's contacts with Connecticut are not many. Defendant is not qualified to do business in the state. It does not maintain an office or other place of business, inventory, bank account or telephone listing in the state. It has no officers, employees or agents in Connecticut, nor does it send such persons into the state to solicit business. It does, however, cause its magazine to be distributed in Connecticut; it was through that medium that plaintiff learned of "Playmate Promotions." Nevertheless, plaintiff personally contacted defendant in Chicago and it is conceded that the contract was actually entered into in Chicago. The only negotiations which took place, on defendant's part, were by telephone or letter from Chicago.

## CONCLUSIONS OF LAW

(1) The contract at issue was to be performed in Connecticut; Conn.Gen. Stat. § 33–411(c)(1), therefore, authorizes the exercise of jurisdiction over defendant.

(2) Defendant having circulated its national magazine in Connecticut, and the instant contract having arisen from a solicitation published in that magazine, application of Conn.Gen.Stat. § 33–411 (c)(1) is not unconstitutional.

(3) The Court having valid in personam jurisdiction over defendant, its

1. The parties refer interchangeably to "Playmate Promotions" and "Playboy Promotions."

motion to dismiss pursuant to Rule 12 (b)(2), Fed.R.Civ.P., must be denied.

## OPINION

In this diversity action, the rule is clear that the federal court must apply the state standard for determining a defendant's amenability to service of process. Arrowsmith v. United Press International, 320 F.2d 219 (2 Cir. 1963) (en banc), overruling Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2 Cir. 1960); Bomze v. Nardis Sportswear, Inc., 165 F.2d 33, 35 (2 Cir. 1948). No federal standard may serve to confer jurisdiction; but where the state standard purports to permit the exercise of in personam jurisdiction, the Court must determine whether application of the state standard would contravene federal due process requirements. See Arrowsmith v. United Press International, supra, at 223.

Thus, the amenability of defendant, a Delaware corporation with its principle place of business in Illinois, to service of process in Connecticut depends upon the applicability of Connecticut's long-arm statute, Conn.Gen.Stat. § 33–411. If Section 33–411 validly authorizes service upon defendant in the circumstances here presented, then, since the manner of service is not challenged, this Court has jurisdiction over defendant.

Section 33–411(c), in relevant part, provides that:

"Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; * * * "

A similar question concerning the constitutional applicability of Conn.Gen.Stat. § 33–411(c)(1) recently was considered by the Court in Electric Regulator Corp. v. Sterling Extruder Corp., 280 F.Supp. 550 (D.Conn.1968). Defendant's position there was that the mere making of a contract in Connecticut was not a sufficient contact to satisfy due process requirements of jurisdiction as construed by International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny, especially Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2 Cir. 1965).[2] The Court assumed the correctness of that assertion but recognized that this did not dispose of the jurisdictional question, since the statute "must be read to authorize the assertion of jurisdiction . . . so long as there are *sufficient total contacts* to meet constitutional requirements." 280 F.Supp. at 556 (emphasis added). This then is the question. In holding that there are "sufficient total contacts" constitutionally to justify the assertion of jurisdiction in the instant case, the Court intimates no view as to the constitutional applicability of Section 33–411(c)(1) absent such additional contacts.[3]

---

**2.** In *Agrashell*, the court accepted the third-party defendant's contention that jurisdiction over it in New York could not be sustained solely on the ground that the contracts there involved were made in that state: "We fail to see in what material respect [the third-party defendant] invoked the benefits and protections of New York law merely by negotiating and concluding goods contracts through the mails and by telephone with persons residing in New York." 344 F.2d at 587.

**3.** In Electric Regulator Corp. v. Sterling Extruder Corp., supra, the Court likewise assumed, without deciding, that Section 33–411(c)(1) could not constitutionally be invoked if the only contact with Connecticut were the technical making of a contract. Jurisdiction was sustained on the ground that the transfer of the risk of loss to the foreign corporation occurred in Connecticut, thereby, when combined with the making of the contracts in Connecticut, providing a sufficient basis for the constitutional exercise of jurisdiction.

Playboy, from which plaintiff in his affidavit asserts he learned of the "Playmate Promotion", is a highly successful magazine with a national circulation. Defendant claims that it had no other contacts with Connecticut arising out of this transaction than the minimal contacts noted above. Its other, though unrelated, contacts with the state, in the view of the Court, do support the assertion of jurisdiction. In Curtis Publishing Co. v. Golino, 383 F.2d 586 (5 Cir. 1967), which involved the publication of an allegedly libelous article in the Saturday Evening Post, jurisdiction was held to have been properly obtained under the Louisiana long-arm statute. Curtis, as HMH here, was not licensed by, nor did it have officers, agents or employees in, or other conventional jurisdictional contacts with, the forum state. The magazine was distributed by an independent local distributor. Subscription agreements were not executed in the forum but in the state to which prospective subscribers forwarded their applications. Judge Thornberry distinguished cases involving newspapers, noting that a magazine actively solicits a nationwide circulation and is not published for the consumption of the residents of its principle place of business.

"Where, as here, the solicited circulation of a corporation's publications account for a relatively significant portion of the corporation's revenue, notions of fair play and substantial justice support the right of the state to require the corporation to answer non-frivolous claims arising out of its contacts with the state, even though it has managed to reduce its physical presence in the state to a minimum.

\* \* \*

"The business activity of Curtis in Louisiana is calculated, ordered, and substantial. The fact that physical contacts are minimized through the use of independent contractors and distributors does not alter the basic existence of Curtis' involvement in, and its pecuniary benefit from, a full exploitation of the Louisiana market; nor does it remove Curtis' reliance upon the protection of Louisiana's laws." 383 F.2d at 592–93.

While statistics on Playboy's Connecticut circulation are not part of the record in the instant case, the reasonable inference is that HMH's contacts with the state through Playboy are of sufficient quality and quantity so as not to offend notions of fair play.[4] Defendant's assertion that its only contact with the forum is the breach of a contract to be performed in the state, and the sending of $30 worth of promotional material into the state pursuant to its anticipated performance, must be rejected. Rather, like Curtis Publishing Co. v. Golino, supra, this is a controversy in which defendant circulated a national magazine within the jurisdiction of the forum and in so doing intentionally sought and obtained responses to its numerous sales and promotional offers from citizens of the forum. These contacts could have required the exercise of the power of the state for defendant's benefit; it is fair therefore that it be "burdened" with the exercise of the state's jurisdiction over its alleged contractual breach.[5]

Asserting jurisdiction in this context comports with the recent movement away from the bias favoring defendant to one permitting plaintiff to insist that defendant come to him when a sufficient basis exists for having him do so. Buckley v. New York Post Corp., 373 F.2d 175, 181 (2 Cir. 1967). While some courts and commentators have indicated that the language of McGee v. International Life Insurance Co., 355 U.S. 220 (1957), wherein jurisdiction was upheld on the isolated contact of mailing a reinsurance certificate into the forum, should be limited to the insurance field, the Court

4. Louisiana, with 1.5% of the nation's population, accounted for 1% of the sales of the Saturday Evening Post. Curtis Publishing Co. v. Golino, supra, at 591.

5. See Hanson v. Denckla, 357 U.S. 235, 253 (1958); Gordon v. International Telephone & Telegraph Corp., 273 F. Supp. 164, 167 (N.D.Ill.1967).

of Appeals for this Circuit in *Buckley*, supra, did not so read *McGee*:

> "Despite some language emphasizing considerations peculiar to insurance, it would not be difficult to extrapolate from the *McGee* decision and opinion a general principle that the due process clause imposes no bar to a state's asserting personal jurisdiction, of course on proper notice, in favor of a person within its borders who suffers damage from the breach of a contract the defendant was to perform there. . . ." 373 F.2d at 181.

 The contacts on which jurisdiction is based in the instant case include the solicitation of responses to "Playmate Promotions" in Playboy, the entry into a contract with a Connecticut resident to be performed in Connecticut, and more generally the continuing circulation of Playboy in Connecticut. This combination satisfies the requirements of constitutional due process. The contract itself need not be viewed in isolation from these other related events. See Michael Schiavone & Sons, Inc. v. Galland-Henning Mfg. Co., 263 F.Supp. 261 (D.Conn.1967).

Just as a contemplated "continuing relation" in the forum between the parties to the contract justified the assertion of jurisdiction in Midwest Packaging Corp. v. Oerlikon Plastics, Ltd., 279 F.Supp. 816 (S.D.Iowa 1968), here the "continuing relation" between defendant's magazine and the forum state provides a sufficient contact to dispel any challenge of unfairness violating constitutional standards when defendant allegedly breached a contract to be performed in the forum. See also Kornfuehrer v. Philadelphia Bindery, Inc., 240 F.Supp. 157 (D.Minn. 1965), sustaining jurisdiction where the goods were to be shipped to, and payment was to be made in, the forum state.[6]

Finally, since the operative facts regarding the merits turn on the consequences of defendant's breach in the forum, and most of the witnesses with knowledge of these consequences undoubtedly live in the forum state, fairness will be served by a trial in the forum.[7]

### ORDER

Ordered that defendant's motion to dismiss for lack of in personam jurisdiction, pursuant to Rule 12(b)(2), Fed.R.Civ.P., is therefore denied.

---

6. Contra, Golden Belt Mfg. Co. v. Jansler Plastic Mold Corp., 281 F.Supp. 368 (M.D.N.C.1967), aff'd per curiam, 391 F.2d 267 (4 Cir.), rejecting jurisdiction. Although the contract contemplated eventual use of the product in the forum, its performance was to be elsewhere. This case is distinguishable in that the only contact was this contemplated use. See also Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4 Cir. 1956).

7. See Curtis Publishing Co. v. Golino, supra, at 594; Buckley v. New York Post Corp., supra, at 181; Kornfuehrer v. Philadelphia Bindery, Inc., supra, at 161–62.