**EUTECTIC CORPORATION**
v.
**CURTIS NOLL CORPORATION.**
Civ. A. No. B-453.

United States District Court,
D. Connecticut.

May 16, 1972.

John M. Calimafde, Old Greenwich, Conn., for plaintiff.

Shaun S. Sullivan, Wiggin & Dana, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

NEWMAN, District Judge.

Plaintiff, a New York corporation, brought this suit for unfair competition and interfering with contractual relations against the defendant, an Ohio corporation, and an individual defendant, Anthony R. Daponte, a Connecticut resident. By stipulation, plaintiff has since dropped its claims against Daponte. Jurisdiction is claimed on diversity of citizenship.

Defendant Curtis Noll Corporation (hereinafter Curtis) has moved, pursuant to Rule 12(b), to dismiss the action for want of personal jurisdiction. Curtis was served with process under Conn.Gen.Stat. § 33-411, Connecticut's corporation "long-arm" statute. Actual service was made upon Daponte, then in Curtis' employ. Curtis' motion is direct-

ed to both lack of personal jurisdiction and insufficiency of service of process.

### Jurisdiction Over the Person

■ Under the doctrine of Arrowsmith v. United Press International, 320 F.2d 219 (2d Cir. 1963), a federal court in a diversity case must look to state law to determine whether it may exercise jurisdiction over foreign corporations. Under the Connecticut long-arm statute, jurisdiction may be exercised over a foreign corporation, if, *inter alia*, (1) the corporation is authorized to transact business within the state, § 33–411(a); (2) the corporation is not so authorized, but is in fact transacting business within the state in violation of § 33–396, and the cause of action arises out of such business, § 33–411(b); and (3) the cause of action arises out of tortious conduct in the state, even by a corporation not transacting business here, § 33–411(c) (4).

■ It should be noted at the outset that defendant does not contend that requiring it to defend this suit in Connecticut would deprive it of due process under the "minimum contacts" test of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. Rather, defendant points to such cases as Electric Regulator Corp. v. Sterling Extruder Corp., 280 F.Supp. 550 (D.Conn.1968), and Southern New England Distributing Corp. v. Berkeley Finance Corp., 30 F. R.D. 43 (D.Conn.1962), for the proposition that Connecticut's long-arm statute, as a matter of state policy, does not define transacting business as broadly as it constitutionally might. Accepting that premise, but recognizing that even as so limited, the Connecticut law is a "far-reaching" one, Chemical Specialties Sales Corp.—Indus. Div. v. Basic Inc., 296 F.Supp. 1106, 1109 (D.Conn.1968), the question as to whether Curtis is subject to personal jurisdiction in this court is one that must turn on the particular facts of this case. Armor Bronze & Silver Co. v. Chittick, 221 F.Supp. 505, 511 (D.Conn.1963).

### Transacting Business

■ It is undisputed in this case that Curtis is not authorized to transact business in Connecticut; so § 33–411(a) is inapplicable. Thus, a threshold question is whether Curtis is transacting business in the state in violation of § 33–396, so as to subject itself to long-arm jurisdiction under § 33–411(b).

In support of its contention that it is not transacting business in Connecticut, Curtis points to the following facts. The corporation has no office, residence, or place of business in Connecticut; has no Connecticut mailing address or telephone listing. Curtis does not own or lease any property in Connecticut, maintain books or records here, nor does it hold director's or stockholders' meetings here. Curtis maintains that its only contact with Connecticut is a number of salesmen who solicit orders here, and that these orders explicitly provide (by a notation on the order form) that they are subject to out-of-state acceptance. Citing § 33–397(b) (5), which exempts from the statutory definition of transacting business "soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts," Curtis argues that the "drummer" activity engaged in by its salesmen is insufficient to subject it to Connecticut long-arm jurisdiction.

However, Judge Anderson recognized in *Armor Bronze, supra,* the mere characterization by a corporation of its Connecticut selling activities as "drumming" does not settle the question. In *Armor Bronze,* the foreign corporation's order blank explicitly made its sales subject to out-of-state acceptance. Nevertheless, it was found that buyers understood themselves to be making a binding contract in Connecticut, and that the substance of the corporation's Connecticut operations spoke "more loudly than the legal terms used . . . in the wording in its contracts and forms." 221 F.Supp. at 514.

The depositions offered as evidence on the motion to dismiss indicate that plaintiff's sales activities in Connecticut represent a substantial and continuous course of business. Manny Schor, Vice-President of Curtis, testified that defendant had thirteen resident salesmen in Connecticut. He estimated Curtis' annual Connecticut sales to be in the area of $300,000. While Schor viewed at least a number of the thirteen salesmen as "independent contractors" whose employment contracts (offered in evidence) give them no authority to bind the corporation, it is clear from both his deposition and that of Daponte that these individuals were, in reality, devoting full-time to the sale of Curtis' products. Cf. *Armor Bronze, supra,* 221 F. Supp. at 513–514.

Daponte's testimony also places Curtis' Connecticut activities outside the "drummer" exception. He testified that despite the requirement for out-of-state acceptance of orders on the sales blanks and in his employment contract, he could not recall orders being rejected for any reason but non-payment of bills. He testified that he never told a customer that his orders were subject to out-of-state acceptance, nor was he instructed to do so. All but "special orders" (for items not regularly in stock) were mailed to a Curtis warehouse in Edison, New Jersey, from which point they were routinely filled.

Curtis contends that Daponte's testimony should be discounted because plaintiff has dropped its claims against him, and because his departure from Curtis' employ at the initiation of this suit was under less than amicable circumstances. At least some of his testimony, however, is supported by Schor's deposition. While Schor said that no order was automatic until approved by personnel at the Edison warehouse, he also stated that this approval was handled in part by clerical personnel, who based their decision on "records of the current status of customers" supplied by the home office. This seems to corroborate Daponte's testimony that orders were routinely filled except when the customer's account was in serious arrears. The evidence clearly indicates that Curtis' salesmen, no matter what the formal language on their order blanks, took orders from Connecticut customers which all parties expected to be routinely filled (with the possible exception of delinquent accounts).

Curtis' reliance on *Electric Regulator Corp., supra,* is misplaced. In that case, Judge Timbers noted that the foreign corporation negotiated with the plaintiff's representatives in New Jersey, and that almost all orders were shipped to plaintiff's representative in that state. The foreign corporation had no employees resident in Connecticut. Here, Curtis has a number of full-time resident salesmen who solicit orders from firms in Connecticut, and those orders are filled through direct shipments to Connecticut firms. As Schor's testimony establishes, the level of this business is hardly *de minimis.*

The case at hand would seem controlled by such decisions as *Armor Bronze, supra,* and *Chemical Specialties Sales Corp., supra.* In the latter, Judge Zampano held that a foreign corporation was transacting business in Connecticut where its state sales were not "an isolated transaction of modest proportions," but rather an indication that Connecticut was an "important market for its product." 296 F.Supp. at 1109. That case involved evidence that the foreign corporation had sent sales personnel into Connecticut only on an occasional basis, and that only one state company was a regular customer. If that case involved transacting business within the meaning of § 33–396, then no other conclusion is possible here, where a large resident sales force accounts for approximately $300,000 in annual sales to a number of Connecticut companies. Curtis is properly before this court as a foreign corporation transacting business in Connecticut under § 33–396 and § 33–411(b).

**764**

## Tortious Conduct Within the State

■ Although the point has not been briefed by the parties, § 33–411(c) (4) would seem to provide an alternative ground of jurisdiction. Plaintiff's complaint sets forth two general causes of action, both sounding in tort, against Curtis: interfering with contractual relations and unfair competition. Both counts evolve from Curtis' hiring of Daponte only a short time after he left plaintiff's employ, at a time when a contractual agreement not to work for plaintiff's competitors was still in force. If such tortious conduct actually occurred, its situs would seem to be Connecticut. Daponte testified that Curtis first held discussions with him and eventually hired him in Norwalk; Daponte's territory while in Curtis' employ was in the state. While the employment contract may have been subject to final out-of-state approval, and Daponte did attend out-of-state meetings with Curtis, the basic facts relied upon to support the tort claims allegedly took place in Connecticut. Certainly, if the Connecticut distribution of some copies of an out-of-state newspaper containing libelous matter is sufficient to constitute "tortious conduct within the state," Buckley v. New York Post Corp., 373 F.2d 175 (2d Cir. 1967), the conduct here also meets that test.

## Service of Process

■ While service of process on Curtis could have been made through the Connecticut Secretary of State under § 33–411(d) [1], plaintiff instead chose to notify defendant of this action through personal service on Daponte. Curtis argues that since Daponte is not "an officer, a managing or general agent, or . . . any other agent authorized . . . to receive service of process" under Rule 4(d) (3), that this form of notice is deficient.

Curtis cites cases such as Harris v. Gland-O-Lac Co., 211 F.2d 238 (6th Cir. 1954), for the proposition that a mere salesman is not a managing or general agent within the meaning of Rule 4(d) (3). However, there is evidence in this case that Daponte was more than just a salesman. He testified that he was promoted from his position as a sales representative to that of sales supervisor, where his duties included the training and overseeing of sales representatives. Schor confirmed the existence of this position, which he called that of "trainer," but was unsure of whether Daponte held it. While Schor first claimed that the highest position within a state was that of district marketing manager, and that Daponte was not such a person, he later admitted that a district manager would have jurisdiction over more than just Connecticut, and that he did not know of anyone in Connecticut with greater authority than Daponte. Daponte said that no Connecticut resident had greater responsibility than did he at the time he was sales supervisor.

In Lone Star Package Car Co. v. Baltimore & Ohio R. Co., 212 F.2d 147, 152 (5th Cir. 1954), the court held that "If a corporation's business is so substantial as to render the corporation amenable to suit in the state, its principal agent in charge of activities within that state meets the test of a 'managing agent.'" Even if Daponte is not viewed as the man in charge in Connecticut, he was clearly a responsible party in charge of a substantial phase of the defendant's Connecticut operations. See Kinard v. Pet Milk Co., 38 F.R.D. 305 (E.D.S.C. 1965); Remington Rand v. Knapp-Monarch Co., 139 F.Supp. 613 (E.D.Pa. 1956). He was clearly one "so integrated with the organization that he will know what to do with the papers." American Football League v. National Football League, 27 F.R.D. 264, 269 (D. Md.1961). Consequently, the service of process was sufficient under Rule 4(d) (3).

Defendant's motion to dismiss for want of jurisdiction over the person is denied.

---

1. See Fed.R.Civ.P. 4(d) (7).