Lawrence B. McFADDIN

v.

NATIONAL EXECUTIVE SEARCH, INC.

Civ. No. B–500.

United States District Court,
D. Connecticut.

Feb. 7, 1973.

Richard Allyn Shaffer, Westport, Conn., for plaintiff.

Philip Hawley Smith, Bridgeport, Conn., for defendant.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

NEWMAN, District Judge.

This is a motion by defendant, National Executive Search, Inc., a District of Columbia corporation, to dismiss for lack of *in personam* jurisdiction a diversity action claiming damages for tort and breach of contract. The plaintiff, Lawrence B. McFaddin, rests his claim for personal jurisdiction on Connecticut's corporation long-arm statute, Conn.Gen.Stat. § 33–411(b) and (c).[1]

The case presents a complex factual situation, with many issues still in dispute. To summarize briefly: the defendant, which is not registered to do business in Connecticut, is engaged as a franchisor in an interstate and international business of locating and placing executive talent. Defendant provides training and materials for its franchisees, advertises its services, and retains veto power over the transfer of any franchise. Though there is some

---

1. Conn.Gen.Stat. § 33–411(b) and (c):

    (b) Every foreign corporation which transacts business in this state in violation of section 33–395 or 33–396 shall be subject to suit in this state upon any cause of action arising out of such business.

    (c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

dispute as to who bears advertising costs, there is agreement that the defendant's services to prospective employers and employees were advertised weekly in the Sunday *New York Times* and the Tuesday *Wall Street Journal,* with the name of its Greenwich, Conn., franchisee appearing on a list of suggested contacts. Further, and most relevant to the instant case, defendant also advertised in the *Wall Street Journal* to prospective franchisees the availability of franchises.

Plaintiff McFaddin alleges that in response to such a franchise advertisement in June, 1971, he contacted the defendant and was in turn placed in touch with a Wisconsin resident, Camp Van Dyke, whose Delaware corporation owned the United Kingdom franchise of National Executive Search, Inc.[2] The plaintiff negotiated the purchase of the United Kingdom franchise from Van Dyke and subsequently negotiated approval of the transfer with the defendant. The defendant does not contest its role in bringing McFaddin and Van Dyke together and in supplying McFaddin with various printed materials attesting to the company's experience in placing executives.

■■ It is well settled that a federal district court in a diversity suit must look to state law to determine if there is jurisdiction over a foreign corporation. Arrowsmith v. United Press Int'l, 320 F.2d 219, 222 (2d Cir. 1963). This requires a two-tiered consideration of (1) whether the appropriate state statute reaches the foreign corporation and (2) whether such statutory reach exceeds the constitutional "minimum contacts" test required by due process. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Buckley v. New York Post Corp., 373 F.2d 175 (2d Cir. 1967); Scher v. HMH Publishing Co., 289 F. Supp. 917 (D.Conn.1968). Cf. Haynes v. James H. Carr, Inc., 427 F.2d 700, 703 (4th Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970).

Section 33–411(c) extends jurisdiction beyond the traditional "transacting business" category of § 33–411(b)[3] to a foreign corporation "whether or not [it] is transacting or has transacted business in this state" if the corporation is a defendant in a cause of action "arising out of" any of the activities enumerated in subsections (c)(1)–(4). See Gardner v. Braniff International, 312 F.Supp. 844 (D.Conn.1970) (applying the "arising out of" requirement to subsection (c)(2)).

■ Plaintiff's principal jurisdictional claim is based upon subsection (c)(2), which allows suit on any cause of action "arising . . . out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state . . . ." Plaintiff alleges that the availability of

---

2. Neither Van Dyke nor the Delaware corporation is a party to this suit.

3. It is not necessary to decide whether defendant's advertisements into Connecticut for franchisees could be considered "transacting business" within the meaning of § 33–411(b), because if they meet the more lenient standard of § 33–411(c)(2), jurisdiction is proper, and if they do not, there is nothing else but the franchise advertising out of which the plaintiff's causes of action arise. The activities of franchisee DeSousa in Greenwich, Connecticut, to which both sides have given much attention, may be relevant in establishing minimum contacts, Perkins v. Benguet Mining Co., 342 U.S. 437, 445–447, 72 S.Ct. 413, 96 L.Ed. 485 (1952), but they do not help in establishing that the long-arm provisions apply. DeSousa's location and activities might establish § 33–411(b) jurisdiction over the defendant for a cause of action arising out of the transaction of the employment business, but plaintiff's claims here arise out of defendant's activities in the business of seeking franchisees. It is also unnecessary to consider whether the ad for a franchise solicits an "order" within the meaning of § 33–397(b)(5), which exempts, from the definition of transacting business, solicitation of orders accepted outside the state.

the United Kingdom franchise came to his attention from an advertisement of defendant in the *Wall Street Journal* circulated in Connecticut. Even if this ad did not contain the specific statements plaintiff alleges are false, it nonetheless constitutes a solicitation of customers for a franchise. Since plaintiff's tort and contract claims both concern franchise acquisition, he has pleaded causes of action "arising out of" business solicited in this state within the meaning of subsection (c)(2).

■ The statutory issue is whether defendant has advertised in Connecticut for prospective franchisees with sufficient regularity so that the franchise ad giving rise to plaintiff's causes of action can be considered part of a campaign to solicit franchise business "repeatedly" within the meaning of subsection (c)(2).[4] The repeated solicitation requirement of subsection (c)(2) has rarely been construed. Compare Connecticut Tool and Manufacturing Co. v. Bowsteel Distributors, Inc., 24 Conn.Sup. 290, 302, 190 A.2d 236 (1963), with Gardner v. Braniff International, 312 F.Supp. 844, 845 (D.Conn.1970). The facts here

disclose that defendant advertised the United Kingdom franchise in the *Wall Street Journal* approximately once a month for four months, and on at least two other occasions ran similar ads for other available franchises. The placing of at least six franchise ads over a six-month period in a newspaper whose circulation clearly includes Connecticut, cf. Buckley v. New York Post Corp., *supra*, demonstrates a sufficiently repetitious pattern to satisfy subsection (c)(2).

■■ The remaining issue is whether application of subsection (c)(2) to all the relevant facts of this case exceeds the requirements of due process.[5] Several cases have held mere solicitation insufficient to establish the constitutionally required minimal contacts. Scheidt v. Young, 389 F.2d 58 (3d Cir. 1968); Beal v. Caldwell, 322 F.Supp. 1151 (E. D.Tenn.1970); Deloro Smelting and Refining Company v. Engelhard Minerals and Chemicals Corporation, 313 F.Supp. 470 (D.N.J.1970); Oswalt Industries, Inc. v. Gilmore, 297 F.Supp. 307 (D. Kan.1969). However, none of these cases involved a specific solicitation statute such as Connecticut's subsection (c)(2).[6]

4. Plaintiff's reliance on the two weekly ads for employers and job-seekers to establish subsection (c)(2) solicitation is misplaced, because the causes of action arise out of the solicitation of franchise business, not employment business. But if subsection (c)(2) is applicable, then these employment ads can be considered, along with all other relevant facts, to determine whether the application of subsection (c)(2) exceeds due process requirements. Perkins v. Benguet Mining Co., *supra*.

5. At first glance, there appears to be some confusion as to whether Connecticut's long-arm statute, § 33–411, extends jurisdiction to the constitutional limits. The doubt expressed in dicta in Chemical Specialties Sales Corp. Industrial Division v. Basic Inc., 296 F.Supp. 1106, 1109 (D. Conn.1968), and Marvel Products, Inc. v. Fantastics, Inc., 296 F.Supp. 783, 785 (D. Conn.1969) in contrast to such Connecticut cases as Sheridan v. Cadet Chemical Corporation, 25 Conn.Sup. 17, 20–21, 195 A.2d 766, 768 (1963), is easily explained by reference to Judge Timbers' distinction between § 33–411(b), which has

"qualifications engrafted" and thus does not reach the constitutional limit and "the other provisions of Connecticut's long-arm statute which, taken as a whole, are meant to extend Connecticut's jurisdictional reach to the constitutional limits." Electric Regulator Corporation v. Sterling Extruder Corporation, 280 F.Supp. 550, 556 (D.Conn. 1968). Horn Construction, Inc. v. Stran-Steel Corporation, 26 Conn.Sup. 201, 216 A.2d 833 (1965); Sheridan v. Cadet Chemical Corp., *supra*; Connecticut Tool and Manufacturing Co. v. Bowsteel Distributors, Inc., 24 Conn.Sup. 290, 190 A.2d 236 (1963).

6. There is one decision in this District which, while not dealing specifically with subsection (c)(2), implicitly holds that mere solicitation is not sufficient to satisfy due process. Powell v. Sealectro, Inc., 205 F.Supp. 6 (D.Conn.1962). However, *Powell* followed Jaftex Corporation v. Randolph Mills, Inc., 282 F.2d 508, 516 (2d Cir. 1960), in regarding the *in personam* jurisdiction question as one of federal law, and thus did not construe the state statute. Cf. Southern New England

Rather, all were general "transacting business" cases, more relevant to a determination of the constitutional reach of § 33–411(b) than of § 33–411(c). Even these cases do not doubt that solicitation is relevant in assessing minimum contacts.[7] More significantly, none of these cases involved the extent of contacts other than solicitation present in this case. Here, the newspaper solicitation was not a "peripheral occurrence," Scheidt v. Young, *supra*, 389 F.2d at 58, nor is there need to fear that Connecticut's long-arm statute is being applied "towards the four corners of the United States, and indeed the world," Oswalt Industries, Inc. v. Gilmore, 297 F.Supp. at 313. This defendant maintained general business connections with Connecticut, as evidenced by the location of one of its franchisees within Connecticut and its twice-weekly bid for Connecticut customers, as well as the specific facts of its relations with this plaintiff, including the Connecticut situs of plaintiff's initial interest in and negotiation for purchase of the United Kingdom franchise. Further the agreement between plaintiff and defendant approving the franchise transfer was prepared and negotiated at least in part in Con-

necticut. This is relevant in assessing minimum contacts, Michael Schiavone & Sons v. Galland-Henning Mfg. Co., 263 F.Supp. 261, 263 (D.Conn.1967), even though these activities do not establish that the contract was "made" in Connecticut so as to support jurisdiction under subsection (c)(1).[8] It does not violate "traditional notions of fair play and substantial justice," International Shoe Co. v. Washington, *supra*, 326 U.S. at 316, 66 S.Ct. at 158, to hold that in this case the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

That a long-arm jurisdictional basis which relies upon solicitation is within the *International Shoe* test has been reiterated by the Supreme Court in several mail solicitation cases. Travelers Health Association v. Virginia, 339 U.S. 643, 648, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The Second Circuit in *Buckley* had no difficulty in expanding *McGee* beyond its unique in-

---

Distributing Corporation v. Berkeley Finance Corporation, 30 F.R.D. 43 (D. Conn.1962). Of course, both *Arrowsmith* and *Buckley* have since intervened to make the issue one of state law and to expand consideration of factors relevant to the due process issue. Further, "the additional minimal requisite, which the courts have required over and beyond sales solicitation," 205 F.Supp. at 9, which Judge Clarie found to be missing in *Powell* was present here.

7. In Scher v. HMH Publishing Co., 289 F.Supp. 917, 921 (D.Conn.1968), Judge Timbers stressed that HMH advertised its promotion in *Playboy* magazine which had wide circulation in Connecticut. *Playboy's* circulation was a crucial element in finding a "continual relation" with Connecticut sufficient to satisfy statutory and constitutional requirements. Judge Timbers' opinion is instructive in that while its ultimate jurisdictional basis was § 33–411(c)(1), it specifically went beyond that subsection's standard, *see, e. g.*, text accompanying n. 3 at 919, to

consider such contacts as "the solicitation of responses to 'Playmate Promotions' in *Playboy*" and "more generally the continuing circulation of *Playboy* in Connecticut." *Id.* at 921.

8. The general Connecticut rule applicable to subsection (c)(1) is that "a contract is considered made when and where the last thing is done which is necessary to create an effective agreement." Electric Regulator Corporation v. Sterling Extruder Corporation, 280 F.Supp. 550, 555 (D.Conn.1968). There is some doubt as to where the plaintiff's contract with Van Dyke was prepared and negotiated, but the parties agree that though the approval of transfer was prepared and negotiated in both Connecticut and the District of Columbia, the defendant executed it in the latter location. The plaintiff does not allege that the contract was actually made in Connecticut and the defendant's out-of-state execution appears to preclude such a conclusion and bars a finding of jurisdiction based solely on subsection (c)(1).

surance circumstances, and it would not be logical to allow a state to predicate jurisdiction on mail or personal solicitation but not on printed communications.[9] Whatever First Amendment objections conceivably might arise have been adequately dealt with in *Buckley*. Accordingly, sufficient statutory authority exists for plaintiff to obtain jurisdiction over the defendant under subsection (c)(2), and this exercise of jurisdiction does not offend any constitutional requirement.

Plaintiff also relies on subsection (c)(4) extending jurisdiction to a cause of action arising out of "tortious conduct in this state." See Buckley v. New York Post Corp., *supra*.

The issue in the instant case, accepting plaintiff's allegations as true for purposes of this motion to dismiss, is whether the alleged misrepresentations by the defendant, acting as agent for Van Dyke, are distinguishable from the *Buckley* libel, or whether they constitute an adequate basis for jurisdiction over plaintiff's tort claim alone, or both it and his contract claim.

While there is no Connecticut case determining whether false representation entering the state by phone, mail or newspaper is sufficiently analogous to libel to satisfy subsection (c)(4), such misrepresentation certainly would, if proved, constitute "tortious conduct." The First Circuit recently relied on *Buckley* in determining that a New York advertising agency came within Massachusetts' "tortious injury by an act or omission in this commonwealth" statute (M.G.L.A. ch. 223A, § 3(c)) when it allegedly performed "de-

livery in Massachusetts by mail or telephone of a false statement originating outside the state, followed by reliance in Massachusetts," Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972). The First Circuit noted that *Buckley*, in construing "the analogous Connecticut statute," considered the shipping of libel to be "indistinguishable" from the direct injury caused by the "frequently hypothesized" gunman firing across a state line, and unlike the shipment of a defective tool, which merely creates the condition for later damage. *Ibid*. See Eutectic Corporation v. Curtis Noll Corporation, 342 F.Supp. 761, 764 (D.Conn.1972). The *Murphy* decision continued,

> Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.

(footnote omitted) 460 F.2d at 664.

Further, the First Circuit rejected any distinction based upon the method by which such false representation reached the forum state, and held that the element of intent satisfied the "purposefully avail[ed]" aspect of the due process requirement enunciated in Hanson v. Denckla, *supra*, 357 U.S. at 253, 78 S.Ct. 1228.

In the instant case it is unclear, however, to what extent plaintiff bases his claim of "knowingly false representations" upon the newspaper advertisements or telephone communications which reached him in Connecticut. The representations he alleges were false may have been made solely at meetings

---

9. Even the distinction between national magazines and local newspapers attempted by the Fifth Circuit in New York Times v. Connor, 365 F.2d 567 (5th Cir. 1965), and Curtis Publishing Company v. Golino, 383 F.2d 586, 590–592 (5th Cir. 1967), was stated with a caveat against "drawing a clear, unwavering line between newspapers and national magazines." *Id.* at 592, n. 13. The recent sad history of such national magazines as the *Saturday Evening Post*, the appellant therein, in-

dicates that the *Golino* court's concern about financial considerations "critical to the newspaper's existence," 383 F.2d at 590, might well cut the opposite way, particularly in the context of such "national" newspapers as the *New York Times* and the *Wall Street Journal*. Further, any such restriction of state long-arm jurisdiction to magazines was implicitly rejected in this Circuit in *Buckley*.

held outside Connecticut. Since requisite jurisdiction exists based upon subsection (c)(2), development of further facts relevant to this subsection (c)(4) issue may await trial.[10]

Accordingly, since the plaintiff has pleaded sufficient facts for *in personam* jurisdiction under Conn.Gen.Stat. § 33–411(c)(2), defendant's motion to dismiss for lack of jurisdiction is denied.[11]

---

10. Any claim of jurisdiction based on subsection (c)(3) is foreclosed by Buckley v. New York Post Corp., *supra.*

11. Defendant initially suggested plaintiff's failure to join an indispensable party as a basis for dismissal, but did not pursue this argument in its brief in support of its motion to dismiss. Basic law of agency makes clear that the plaintiff could have relief against the defendant corporation alone, and that Van Dyke and the Delaware Corporation which sold the franchise in question are not indispensable. *See* Restatement of Agency, Second, § 348 and Rule 19, Fed.R.Civ.P. Therefore, this argument suggested but not pressed by defendant also fails.