**WHELEN ENGINEERING COMPANY, INC.**

v.

**TOMAR ELECTRONICS, INC.**

**Civ. No. H–87–470 (AHN).**

United States District Court,
D. Connecticut.

Oct. 26, 1987.

Thomas G. Watkins, III, Cahill, Sutton & Thomas, Phoenix, Ariz., for plaintiff.

Guy D. Yale, Chilton, Alix & Van Kirk, Hartford, Conn., for defendant.

RULING ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO TRANSFER

NEVAS, District Judge.

This is an action for trademark infringement and unfair competition, brought under federal and state law by a Connecticut manufacturer of electric strobe warning light equipment against an Arizona-based manufacturer of electric strobe warning light equipment, alleging wrongful use of five registered trademarks and one unregistered trademark owned by the plaintiff, and seeking injunctive relief and money damages. The defendant has moved to dismiss for lack of personal jurisdiction and for improper venue under Rules 12(b)(2) and 12(b)(3), Fed.R.Civ.P., and to transfer the case to Arizona, pursuant to 28 U.S.C. Section 1406(a). The plaintiff opposes both dismissal and transfer. Both parties have supported their positions with affidavits and exhibits. Having heard oral argument on October 14, 1987, the court now denies the defendant's motion to dismiss for lack of personal jurisdiction and for improper venue. Accordingly, the request to transfer under 28 U.S.C. Section 1406(a) is also denied. However, for the convenience of the parties and witnesses, in the interest of justice, the matter is transferred to the District of Arizona pursuant to 28 U.S.C. Section 1404(a).

*Background*

The plaintiff, Whelen Engineering Company ("Whelen"), incorporated and head-

quartered in Connecticut, manufactures electric strobe warning light systems under five trademarks registered with the United States Patent Office: Whelen, Strobe II, Max Beam, Mini–Max Beam, and Universal. Whelen also asserts rights to an unregistered mark, Flat–Pak, claiming that through use it has taken on a secondary and distinctive trademark meaning in Whelen's trade territory. Whelen markets its strobe light products nationally to specialized customers such as utilities and police and fire departments, for use on emergency vehicles, school buses, motorcycles and the like. The six marks appear on products and packaging, on letterheads and bills, and on advertising by direct mail and in telephone directories, catalogs and periodicals distributed throughout the United States.

The defendant, Tomar Electronics, Inc. ("Tomar"), is wholly owned by Thomas Sikova, who is also its president, and by his wife; it is incorporated under the laws of Illinois but located entirely in a single facility in Arizona. It, too, manufactures emergency strobe lighting equipment; at least some of its products and advertising bear marks identical or very similar to those registered by Whelen. Tomar maintains no office, address or telephone number in Connecticut, and has no manufacturing or sales representative or agent residing or located in Connecticut. Tomar products are marketed nationally through advertising in catalogs and periodicals, many of which circulate in Connecticut. In response to reader inquiries during 1986 and 1987 to date, Tomar mailed catalogs to 30 potential customers in Connecticut, none of whom purchased Tomar products or received any subsequent mailings. During 1986, Tomar did make two sales in Connecticut of $1,800 and $48, amounting to 0.09% of its gross sales. In 1987 to date, Tomar has made Connecticut sales of $1,798 to a single customer, representing 0.01% of gross sales. None of those sales involved products bearing an allegedly infringing trademark. However, in June 1987 a Connecticut resident initiated an order and purchase from Tomar of its Minimax II and Maxi Strobe II strobe lights costing $325.51; subsequently, he was solicited for additional business by Tomar's Arizona-based director of marketing.[1] Distribution of Tomar products is handled by Maxi–Signal Products Company, of Illinois, whose sales territory Tomar knows to include Connecticut. Maxi–Sales has at least one Connecticut-based agent who has represented himself to potential customers as a Tomar sales representative.

Shortly after the infringing sales were made, Whelen instituted this suit, charging that Tomar used Whelen's trademarks or colorable imitations of them in marketing, selling and distributing Tomar products in Connecticut, and that Tomar falsely represented that Tomar products are substantially the same as Whelen's, in violation of federal trademark law, 15 U.S.C. Section 1051 *et seq.* ("Lanham Act"); of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. Sections 42–110a *et seq.;* and of the common law of unfair competition and trademark protection. The defendant was served with process under Connecticut's stock corporation long-arm statute, Conn.Gen.Stat. Section 33–411.

## *Discussion*

### I. *Personal Jurisdiction* [2]

When personal jurisdiction is challenged through a motion to dismiss under Rule 12(b)(2), Fed.R.Civ.P., the plaintiff has the burden of making a prima facie showing that the court has jurisdiction over the defendant. *United States v. Montreal Trust Co.,* 358 F.2d 239, 242 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). See *McNutt v. Gener-*

1. See note 4.

2. The plaintiff properly invokes this court's subject matter jurisdiction under 28 U.S.C. Section 1331 (federal question: Lanham Act); 28 U.S.C. Section 1332 (diversity; amount in controversy

excees $10,000); and statutory original jurisdiction over trademark actions conferred by 15 U.S.C. Section 1121 and 28 U.S.C. Section 1338(b).

*al Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). The plaintiff must do so through actual proof, *Bowman v. Grolsche Bierbrouwerij B.V.,* 474 F.Supp. 725, 728 (D.Conn.1979), which may include affidavits and supporting materials. *See Shaw v. American Cyanamid Co.,* 534 F.Supp. 527, 528 (D.Conn.1982); *In re Connecticut Asbestos Litigation,* C.M.L. No. 10, slip op. at 3 (D.Conn. Oct. 2, 1986) (Nevas, J.).

Personal jurisdiction in a trademark infringement and unfair competition action against a foreign stock corporation defendant is subject to Conn.Gen.Stat. Section 33–411. *Marvel Products, Inc. v. Fantastics, Inc.,* 296 F.Supp. 783, 785 (D.Conn. 1968). Subsection 33–411(c), on which this plaintiff relies, specifically does not require the foreign corporation to have ever transacted business in Connecticut; however, the court must find a "nexus between the cause of action alleged and [the] conduct of the defendant within the state as specified in its various clauses." *In re Connecticut Asbestos Litigation,* slip op. at 5; *Fuehrer v. Owens–Corning Fiberglass Corp.,* 673 F.Supp. 1150, 1154 (D.Conn.1986) (Blumenfeld, J.).

Whelen alleges that Tomar's actions giving rise to this suit satisfy three alternative statutory grounds for long-arm jurisdiction. First, that Tomar repeatedly solicited business in Connecticut, by mail or otherwise (Subsection 33–411(c)(2)). Second, that Tomar produced, manufactured or distributed goods with the expectation that they would be used in Connecticut, and they were in fact used here (Subsection 33–411(c)(3)). Third, that the tortious conduct occurred in Connecticut from either repeated activity or single acts (Subsection 33–411(c)(4)). Only one of the provisions needs to be satisfied for jurisdiction to attach; the one most clearly met in this case

is Subsection 33–411(c)(4), requiring tortious conduct in this forum.

### A. Tortious Conduct—Subsection 33–411(c)(4)

"It is now established that 'a cause of action for trademark infringement exists ... where an individual uses a trademark registered to another (1) without consent, (2) in connection with the sale of goods, (3) where such use is likely to cause confusion or to deceive purchasers as to the source or origin of the goods.' *Franchised Stores of New York, Inc. v. Winter,* 394 F.2d 664, 668 (2d Cir.1968)." *Haydon Switch and Instrument, Inc. v. Rexnord, Inc.,* No. N–86–190 (D.Conn. June 4, 1987) (Cabranes, J.) [Available on WESTLAW, DCT database]. A plaintiff must show that "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed confused, as to the source of the goods in question."[3] *McGregor–Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1130 (2d Cir.1979). *See Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Thus, the tortious conduct in a trademark infringement action is deemed to take place "where the passing off occurs." *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76, *rehearing denied,* 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120 (1956). The same is true for an unfair competition action. *Marvel Products, Inc.,* 296 F.Supp. at 785 (citing *Williams v. Brooks,* 50 Conn. 278, 283 (1882); Restatement of Torts Section 711, 717 (1938)); *G.H. Mumm Champagne v. Eastern Wine Corp.,* 142 F.2d 499, 502 (2d Cir.1944) (trademark infringement and unfair competition actions "are in substance the same: i.e. the diversion of prospective buyers by misleading representation").

The defendant argues that such "passing off" requires an actual sale of the product

---

**3.** Actual confusion between trademarks is not required; indeed, it is only one of several factors used in this circuit to be considered in determining likelihood of confusion, as articulated in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 256 (2d Cir.1987). *See* 3A R. Callman,

bearing the infringing mark.[4] However, it is widely held that "the distribution of catalogs offering goods under an infringing trademark, even without actual sales, constitutes a tortious act." *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 889 (S.D.N.Y.1974) (extensive citations omitted). A factor distinguishing a trademark infringement action is that the circulating of printed materials bearing the allegedly infringing marks is itself a tortious act for purposes of a long-arm statute. *See, e.g., Mitchell Daroff Enterprises, Inc. v. Danik, Inc.*, 209 U.S.P.Q. 531, 533 (E.D.Pa.1979). Furthermore, "[o]nly a single act of tortious conduct need be shown in order to invoke [Subs]ection 33–411(c)(4)." *Teleco Oilfield Services, Inc. v. Skandia Insurance Co.*, 656 F.Supp. 753, 758 (D.Conn.1987).

■ Whelen has shown that a number of print ads bearing allegedly infringing marks appeared in publications with Connecticut circulation. In addition, Tomar sent at least thirty catalogs to potential customers in Connecticut upon their request. Finally, Tomar sold apparently infringing products to one Connecticut customer. These allegedly tortious acts clearly subject the defendant to jurisdiction under Subsection 33–411(c)(4).

## B. *Solicitation—Subsection 33–411(c)(2)*

■ A foreign corporation is subject to suit under Subsection 33–411(c)(2) for causes of action that arise from business solicited in Connecticut if (1) the solicitation has been repeated, and (2) it has led to orders or offers which form the basis for the cause of action. *Air Kaman, Inc. v. Penn–Aire Aviation, Inc.*, 542 F.Supp. 2, 5

(D.Conn.1981). There is no established test for determining the quantum of solicitation activity that will suffice. At a minimum, it has been held that placing at least six franchise ads over a six-month period in a newspaper [*Wall Street Journal*] whose circulation clearly includes Connecticut constitutes a sufficiently repetitive pattern to satisfy Subsection 33–411(c)(2). *McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166, 1169 (D.Conn.1973). *Cf. Gardner v. Braniff International*, 312 F.Supp. 844, 845 (D.Conn.1970) ("slender contact" through telephone directory listing alone insufficient under Subsection 33–411(c)(2)).

It cannot be said that the defendant here was unaware that buyers for its products were being solicited in Connecticut. *Air Kaman*, 542 F.Supp. at 5. Although Tomar did not specifically target a sales campaign to Connecticut, it engaged the services of a national marketing and distribution company, with the knowledge and belief that one of the territories it covered was Connecticut. That company's task was to reach the specialty markets served by products such as those manufactured by Tomar—markets that are located in every state. Over the course of a year and a half, it placed advertisements in 78 publications, at least 30 having circulation in Connecticut. The ads carried Tomar's name and address; as a direct result of them, Tomar itself received more than 30 orders for catalogs, which themselves carried the infringing marks. It was at the least by supplying these catalogs, in response to advertising that solicited reader response, that the defendant subjected itself to per-

---

The Law of Unfair Competition, Trademarks and Monopolies, Section 20.06 (4th ed. 1983).

**4.** The defendant's reliance on *Vanity Fair* for this proposition is inappropriate. The court in that case had before it only the claim that the defendant was *selling* products bearing the allegedly infringing marks, not as here, marketing them through advertising and catalogs showing the infringing marks or look-alikes. That was also the situation in *Marvel Products*. In both cases, the courts found that there were insufficient sales, absent more, to support personal jurisdiction. The defendant here has sought to

challenge jurisdiction by pointing to the fact that the only sales in Connecticut of Tomar products actually bearing an infringing mark were pursuant to an order placed by a Whelen customer, at Whelen's behest. The plaintiff acknowledges that this was so. While the court looks askance at such contrivances, it recognizes that the purpose of orchestrating the sale was to establish the availability in Connecticut of the infringing product and thus verify the applicability of the infringing advertising. Clearly, the arranged sale itself does not alone ground jurisdiction.

sonal jurisdiction under Subsection 33–411(c)(2).[5]

### C. *Products to be Used in Connecticut— Subsection 33–411(c)(3)*

■ By the reasoning applied to Tomar's activities in soliciting business in Connecticut, it also seems apparent that the defendant manufactured its products with the "reasonable expectation" that they would find their way to its specialized markets in Connecticut, thus satisfying long-arm jurisdiction under Subsection 33–411(c)(3). The purpose of this provision is to enable Connecticut courts to reach manufacturers in product liability suits where the defendants did not themselves ship their products to Connecticut. *Buckley v. New York Post Corp.*, 373 F.2d 175, 177–78 (2d Cir.1967); *Bull v. Asbestos Corporation,* No. H–82–463, slip op. at 4–5 (D.Conn. May 25, 1984) (Blumenfeld, J.) [Available on WESTLAW, DCT database]. Thus, Tomar cannot escape jurisdiction merely by asserting that its catalogs and products were distributed exclusively through a third party retailer.

### D. *Due Process*

Having satisfied three separate and distinct statutory grounds for personal jurisdiction, the defendant's contacts with this forum must be scrutinized again to determine whether they are sufficient to meet constitutional due process requirements. Construing Subsection 33–411(c) for this purpose, the Connecticut Supreme Court has ruled that "it is the totality of the defendant's conduct and connection with the case that must be considered ..., to determine whether the defendant could reasonably have anticipated being haled into court here. *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 287, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980); *Kulko v. California Superior Court,* 436 U.S. 84, 92, 97–98, 98 S.Ct. 1690, 1696, 1699–1700, 56 L.Ed.2d 132 (1978); *Hanson v.*

*Denckla,* 357 U.S. 235, 251, 253, 78 S.Ct. 1228, 1238, 1239, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)." *Lombard Brothers, Inc. v. General Asset Management,* 190 Conn. 245, 255, 460 A.2d 481, 486 (1983).

This is not a case where the plaintiff's unilateral action brought the defendant's advertising and products into Connecticut. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567; *Bull,* slip op. at 7. It is uncontroverted that Tomar's pattern of product promotion and sales comprehended markets in Connecticut. Tomar readily supplied interested potential customers with catalogs advertised in periodicals having Connecticut circulation, provided products on order (either directly, or knowingly through its distributor), and demonstrated its readiness to initiate telephone solicitation of Connecticut customers. Although Tomar's business relationship with this district was not highly developed, the company clearly anticipated a viable and growing sales market in Connecticut, thus supporting this court's conclusion that "the defendant knew its goods would enter the forum state either in the specific instance giving rise to the litigation or on a regular enough basis that it 'has clear notice that it is subject to suit here' " and can fairly be required to defend itself in this jurisdiction. *Shaw,* 534 F.Supp. at 528.

### II. *Venue*

■ The court is persuaded that the net convenience of the parties and witnesses, and the availability of the principal evidence, militate that the court exercise its discretion to transfer this action to the District of Arizona in the interest of justice under 28 U.S.C. Section 1404(a).[6] It may be that because "[t]he end result is the same ... very few litigants will care whether the court purports to proceed under Section 1404(a) or Section 1406(a) in

---

**5.** Whelen has not shown that the two sales of allegedly infringing products to a Connecticut customer, see note 4, were in response to those solicitation activities. Tomar's own marketing director followed up on those sales to solicit further business, but there is no evidence that his activity generated additional sales.

**6.** The defendant's employees, business and sales records, and supporting witnesses are located entirely in Arizona.

transferring to a district where service can be made." 15 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure: Jurisdiction* Section 3827 at 172 (2d ed. 1986). However, because the plaintiff has raised claims under common law and state statutory law, it is important to determine whether venue properly lies in Connecticut at all, for the law of the original forum will follow the case if it is transferred pursuant to Section 1404(a), but not if it is transferred under to Section 1406(a). *See Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

Because the plaintiff brings his action under federal trademark law, venue as to those claims is controlled by 28 U.S.C. Section 1391(b), which provides in pertinent part that this suit may be brought only in the judicial district where the claim arose, or in Arizona, where the defendant resides.[7] *Greene v. Sha–Na–Na,* 637 F.Supp. 591, 599 (D.Conn.1986). The "claim arose" clause was added by amendment in 1966 to close the gap in venue laws which had previously left plaintiffs with no proper venue for federal action against multiple defendants with multi-district litigation.[8] *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 710 n. 8, 92 S.Ct. 1936, 1939 n. 8, 32 L.Ed.2d 428 (1972). Although the phrase has infrequently been construed, courts have avoided applying it so broadly as to locate venue in any of the many districts where some part, however small, of an alleged wrong has taken place. "In the context of … trademark litigation … such an interpretation could well establish venue in almost every district in the nation." *Transamerica Corp. v. Transfer Planning, Inc.,* 419 F.Supp. 1261, 1263 (S.D.N.Y.1976). The more persuasive approach is that adopted in *Honda, supra,* wherein the statute gives *at most* a right to sue only in a district where a "substantial part" of the claim arose. *Id.*

Operating under this relatively conservative construction of Section 1391(b), trial courts have struggled mightily to articulate and apply rational standards for determining where a "substantial part" of a claim arises. The typical practice is to apply a "weight of contacts" test, in which the court compares the defendant's contacts in the various districts with which the litigation is concerned. *Honda,* 374 F.Supp. at 891. *See Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252 (E.D.Pa.1968) (established "weight of contacts" test for antitrust conspiracy case). *See also Honda,* 374 F.Supp. at 890–92 (adopted it for trademark infringement action). In *Honda,* the court found the defendant's contacts with New York were adequate to support personal jurisdiction under the state long-arm statute, but were too "miniscule" to sustain venue. Those contacts amounted to (1) mailing about 20 catalogs to New York over five years, in response to mail requests principally generated by magazine advertisements, and (2) over a four-year period filling three mail

---

7. The plaintiff has also asserted that Connecticut is the proper venue because Tomar is "doing business" here within the meaning of 28 U.S.C. Section 1391(c), and that Tomar is consequently a Connecticut resident amenable to suit here. In doing so, the plaintiff has improperly sought to obligate the defendant to make a persuasive showing that venue cannot lie in Connecticut. Although some cases in other jurisdictions have held that the burden is on the objecting defendant to establish that venue is improper, the majority and "better" view is that, when objection has been raised, it is the plaintiff's burden to establish that the district he chose is a proper venue. *See* 15 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure: Jurisdiction* Section 3826 (2d ed. 1986). *Cf.* 1 *Moore's Federal Practice,* Section 0.140[1.–4] at 1319 (2d ed. 1986) (putting burden on plaintiff is only to be preferred in "limited situations" such as patent

infringement cases). Beyond merely reciting Tomar's contacts with Connecticut, the plaintiff has made no showing that Tomar's activities here were so extensive as to justify requiring it to be licensed to operate in this state. It is instructive to note that the plaintiff chose not to have to try to make such a strong showing, when it alleged personal jurisdiction under a provision other than Conn.Gen.Stat. Section 33–411(b) (foreign corporation which "transacts business" in Connecticut)—although, of course, the two standards are not identical.

8. Put another way, it is a practical response to the problem peculiar to litigation in areas such as antitrust or trademark infringement, where a straight "cause arose" standard could put venue in virtually every district in the nation.

orders for allegedly infringing goods, valued at a total of $37, amounting to .01% of the defendant's total sales in that category of goods and .0033% of its total sales. No advertisements bearing the infringing mark appeared in New York. The plaintiff having sued only under the Lanham Act, the court reasoned that a ruling for improper venue would "not deprive plaintiff of any substantive rights, but merely force it into another district where a much greater volume of the allegedly infringing business has been conducted." *Id.* at 892. Instead of dismissing the case outright, the court transferred it under Section 1404(a). The long line of cases flowing from the *Honda* analysis has been extensively briefed by the defendant.

Even applying a test such as the "weight of contacts," there may arise "the unusual case in which it is not clear that the claim arose in only one specific district." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979). In such a case, the plaintiff may choose among the districts to the extent they are approximately equal "in terms of availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not the plaintiff)." *Id.* Venue analysis under Section 1391(b) therefore, is two-tiered.

■ Turning to the instant case, it is apparent that Tomar's contacts with Connecticut over the year and a half in question satisfy the *Honda* test, albeit by a slight margin. Those contacts, in so far as they gave rise to plaintiff's claim, amount to: (1) mailing about 30 catalogs bearing infringing marks to Connecticut in response to mail requests generated by magazine advertisements, and (2) filling two orders placed from Connecticut for allegedly infringing goods, valued at a total of $325.51, a tiny fraction of a percent of the defendant's total sales—and sales in any event contrived by the plaintiff.[9] In addition: (3) advertisements in at least 20 periodicals having Connecticut circulation, some of which carried infringing marks; (4) telephone calls to at least one potential Connecticut customer from Tomar's Arizona-based marketing director to solicit business; and (5) active promotion of sales here by Connecticut-based agents of the firm that retained Tomar had to market Tomar products with knowledge that the firm's sales territory included Connecticut. While these contacts are not overwhelming, the court has no evidence that the defendant's contacts with the other available forum, Arizona, are significant enough to sustain the plaintiff's claim at all, let alone to give rise to a "substantial part" of the claim.[10] *Honda's* comparative analysis is therefore not dispositive.

Furthermore, because it is clear that Whelen's federal trademark claims as framed arise in Connecticut but not in Arizona, the *Leroy* convenience scrutiny is not germane.

The plaintiff's state statutory claim under CUTPA is not governed by Section 1391(b), but by the simple fact that the claim entirely a creature of the defendant's contacts with Connecticut and therefore not actionable elsewhere. Thus, dismissal and transfer would deprive the plaintiff of substantive rights—in sharp contrast with the *Honda* line of cases.

This case wonderfully illustrates that "the problem of determining proper venue remains more complex than it needs be." 1 *Moore's Federal Practice* Section 0.140[1.–1] at 1309 (2d ed. 1986). The battery of tests that have been developed to help courts determine where to site a lawsuit

**9.** The defendant erroneously contends that no "claim arose" in this district because no products bearing the infringing marks were sold here. As noted above, in a trademark infringement action the claim arises from the circulation of ads and catalogs as well as from the sale of goods. Furthermore, the defendant mistakenly predicates this argument on the existence of a "Hartford District" and has computed the allegedly tortious activity accordingly; in fact, of course, the judicial district in which this court sits encompasses all of Connecticut.

**10.** The defendant has asserted that its sales volume in Arizona is significantly greater than in Connecticut, but there is no indication that it advertises or sells any infringing products there, or otherwise acts so as to give rise to any of the plaintiff's claims.

that could be at home in any of several districts are intended simply to achieve fairness, equity, efficiency and convenience to the parties. Venue in Connecticut is proper for the purpose of bringing this lawsuit; but, as noted above, Arizona is to be preferred for litigating it.

Accordingly, the court denies the defendant's motion to dismiss for improper venue, and asserts jurisdiction over this case. Consequently, the defendant's request for transfer as an alternative to dismissal, pursuant to Section 1406(a), is denied as moot.

### Conclusion

For the foregoing reasons, the defendant's motion to dismiss for lack of personal jurisdiction and for improper venue are hereby denied, as is the defendant's request for transfer in lieu of dismissal. Upon the court's own motion, for the convenience of the parties and witnesses, in the interest of justice, the matter is transferred forthwith to the District of Arizona, pursuant to 28 U.S.C. Section 1404(a).