## In re PERRIER BOTTLED WATER LITIGATION.

### MDL No. 844 (TFGD).

United States District Court,
D. Connecticut.

Nov. 9, 1990.

---

Michael J. Pucillo, Greenfield & Chimicles, West Palm Beach, Fla., C. Oliver Burt, III, Greenfield & Chimicles, Haverford, Pa., William E. Hoese, Dianne M. Nast, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., David Berger, Harold Berger, Berger & Montague, P.C., Philip P. Kalodner, Gerald J. Rodos, Barrack, Rodos & Bacine, Philadelphia, Pa., William E. Haggerty, Morgan, Hallgren, Crosswell & Kane, P.C., Lancaster, Pa., Phyllis C. Kaufman, Bernard M. Gross, Warren Rubin, Gross & Metzger, P.C., Philadelphia, Pa., Harvey Greenfield, Law Firm of Harvey Greenfield, New York City, Richard A. Fuchs, Koskoff, Koskoff & Bieder, P.C., Bridgeport, Conn., Gerald D.W. North, North & Barron, Phoenix, Ariz., Howard Z. Rosen, Posner & Rosen, Margot A. Metzner, Hufstedler, Kaus & Beardsley, Albert Cary Plotkins, Graiwer & Goldbert, Inc., Los Angeles, Cal., David B. Zabel, Cohen and Wolf, P.C., Bridgeport, Conn., Wayne A. Graves, George J. Levin, Jr. Assoc., Philadelphia, Pa., for plaintiffs.

Douglas E. Lee, Pine City, N.Y., pro se.

James J. Hagan, Jay S. Handlin, Robert A. Bourque, John J. Kenney, Simpson Thacher & Bartlett, New York City, for defendants.

## RULING ON DEFENDANT'S MOTION TO DISMISS

DALY, District Judge.

These lawsuits were precipitated by the February 14, 1990 public announcement that quantities of benzene, a petro-chemical and possible carcinogen, had been identified in a widely consumed, sparkling mineral water. *See* Malone Decl. at Exh. A. Plaintiffs filed suits in various districts around the country, asserting claims relating to defendants' marketing representations that Perrier water was "naturally pure." Defendants in actions filed in this District, and in the Eastern District of Pennsylvania, are Source Perrier S.A. ("Source Perrier"), a French corporation, Perrier Group, and Perrier Group of America, Inc. Defendants in an action filed in the Central District of California include entities referred to as "Perrier, Inc., a French corporation", and "Perrier, Inc."

In the interests of the just and efficient conduct of this litigation, and to best serve the convenience of the parties and the witnesses, the Judicial Panel on Multidistrict Litigation ordered that many of the cases filed in the United States were to be transferred to and consolidated for pretrial purposes in this District.[1] *See* Order of Panel

---

**1.** The Panel did not transfer *Seltzer Sister Bottling Co., Inc. v. Source Perrier, S.A.,* C.A. No. 90–20230–WAI (N.D.Cal.1990) to this District.

(6/13/90). Defendant Source Perrier has filed a motion to dismiss plaintiffs' claims, asserting that none of the jurisdictions in which complaints were filed may exercise personal jurisdiction over it, and that the Court should dismiss claims against several of the defendants named in the complaint filed in the Central District of California, as these entities simply do not exist. For the reasons described below, this motion is denied.

## FACTS

The relevant facts, as alleged by the plaintiffs, are as follows:

(1) Source Perrier, in conjunction with the other defendants, markets mineral water produced from a spring in Vergeze, France. Malone Decl. at Exh. D.

(2) Perrier Group of America, Inc. is a majority-owned subsidiary of Source Perrier. Malone Decl. at ¶ 2.

(3) Defendant Great Waters of France, Inc. shares a common address with Perrier Group of America, Inc., and has virtually identical officers and directors.[2] Malone Decl. at Exhs. B & C.

(4) Defendants sold over $119,000,000 worth of bottled water in the United States in 1989. *See* Complaint at ¶ 21.[3] Perrier water is available in all fifty states. Malone Decl. at Exh. D.

(5) Source Perrier designed containers of Perrier water specifically for U.S. markets, bearing liquid ounce markings, rather than metric measures. Malone Decl. at Exh. H.

(6) The containers' design is the subject of U.S. registered trademarks. Malone Decl. at Exh. H.

(7) Source Perrier, in part, created the distribution chain for U.S. sales. Malone Decl. at Exh. D.

(8) In February, 1990, defendants recalled all Perrier water in the United States because of benzene contamination. Source Perrier played a role in controlling both this recall, and the subsequent remarketing effort. Malone Decl. at Exh. G.

(9) Source Perrier had a role in providing information in response to customer inquiries relating to the recall. Malone Decl. at Exh. G.

## DISCUSSION

### [1] Personal Jurisdiction

■ Source Perrier claims that exercising personal jurisdiction in any of the districts in which plaintiffs have filed these cases would contravene the Due Process Clause of the United States Constitution.[4] A two-step analysis is used when determining whether the exercise of personal jurisdiction would offend Due Process: (1) does the defendant have minimum contacts with the forum;[5] and, if so, (2) does the asser-

---

**2.** Maurice Epry is listed as a Director of Great Waters of France, Inc., but not of Perrier Group of America, Inc.

**3.** *See* Second Consolidated Amended Complaint in the *Stasi* action, filed in the Eastern District of Pennsylvania, and now a part of MDL 844 (TFGD).

**4.** A complete analysis of whether the exercise of personal jurisdiction over a non-resident defendant is appropriate includes a threshhold examination of whether the relevant state long-arm statute is applicable. *McFaddin v. National Exec. Search, Inc.,* 354 F.Supp. 1166, 1168 (D.Conn.1973). The long-arm statutes in question are Conn.Gen.Stat. § 33–411(c)(3) for the complaint filed in this District, and 42 Pa.C.S.A. § 5322 *et seq.* for the complaints filed in the Eastern District of Pennsylvania. Since defendant limits any in-depth discussion to the Due Process issues, however, the Court need not

engage in a lengthy analysis of these statutes. Upon review, the Court is satisfied that the complaint filed in this District meets the requirements of the Connecticut long-arm statute. *See Schiavone & Sons, Inc. v. Galland–Henning Mfg. Co.,* 263 F.Supp. 261 (D.Conn.1967). Since the Pennsylvania long-arm statute is coextensive with the limits of Due Process, *Van Buskirk v. Carey Canadian Mines Ltd.,* 760 F.2d 481, 489–90 (3rd Cir.1985), the Court's treatment of defendant's Due Process arguments disposes of this issue.

**5.** In a diversity action, the appropriate inquiry under this prong of the analysis is the extent of defendant's minimum contacts with the state in which the district court sits. *See Arrowsmith v. United Press Int'l,* 320 F.2d 219, 231 (2d Cir. 1963). In the complaint filed in this District, and in the Pennsylvania complaints, however, plaintiffs have asserted RICO claims, 18 U.S.C. § 1961 *et seq.,* thus raising federal questions, and providing a different basis for the Court's

tion of jurisdiction comport with traditional notions of fair play and substantial justice. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ("Volkswagen"). Although this test is easily stated, application of at least the first prong—minimum contacts—has proven quite complex. *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) ("this determination is one in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable.").

Some general guideposts and principles, however, can be gleaned from a brief review of certain cases more recently decided by the Supreme Court. In *Volkswagen,* two New York residents filed a product liability suit in Oklahoma against several defendants, including a New York retailer who sold their auto (which was the subject of the litigation), the distributor for the New York region, the national importer, and the international manufacturer. Plaintiff's car had caught fire on an Oklahoma freeway on which they were traveling en route to a new residence in Arizona. The Supreme Court held that the Oklahoma Court's assertion of jurisdiction over the retailer and distributor violated Due Process.

In so holding, the Court deemed the fact that the retailer and distributor might be able to foresee the entry of the car into Oklahoma insufficient to establish the requisite minimum contacts with the forum. *Id.,* 444 U.S. at 295–99, 100 S.Ct. at 566–68 (foreseeability alone, without "affiliating circumstances" by which a defendant avails himself of the privileges and benefits of the forum state's laws cannot support jurisdiction). The Court noted that the car's presence in Oklahoma was a result of plaintiff's unilateral activity, not the defendants' efforts. *Id.* at 298, 100 S.Ct. at 567.

The propriety of asserting jurisdiction over the national importer, or the international manufacturer was not presented for review in *Volkswagen.* The Court indicated, however, that exercising jurisdiction over these defendants was consistent with Due Process. *Id.* at 297–98, 100 S.Ct. at 567–68. The Court suggested that if a defendant purposefully caters to a national market, distributing its product across the country through its own efforts or through the efforts of middlemen, jurisdiction may be asserted over that defendant in virtually any state in which it is claimed the product malfunctioned. *Id.* at 297, 100 S.Ct. at 567. Thus, in order to support the exercise of jurisdiction in such a case, the Court must find some purposeful conduct either by direct acts of the defendant in the forum state or by conduct outside the state that, because of its character, the defendant should have foreseen could result in a suit in the forum.

The Court revisited this topic in *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Asahi Metal Indus. Co. ("Asahi") manufactured tire valve assemblies in Japan, and sold them to several tire manufacturers, including Cheng–Shin Rubber Indus. Co. ("Cheng–Shin") in Taiwan. Cheng–Shin incorporated Asahi's product into finished tires, which it sold worldwide. Cheng–Shin bought such tire valve assemblies from numerous suppliers. Approximately twenty percent of Cheng–Shin's U.S. sales took place in California.

In 1979, a products liability suit arising from a motorcycle accident claimed to have resulted from a defect in a Cheng–Shin tire was brought in California. Cheng–Shin,

subject matter jurisdiction. 28 U.S.C. § 1331. Although the parties devote little attention to this issue, there is support for the suggestion that when evaluating the propriety of a federal court's exercise of personal jurisdiction over a defendant responding to a federal claim, the relevant minimum contacts are those with the nation as a whole. *See, e.g., Prete v. Lepore,* 125 F.R.D. 572, 576–77 (D.Conn.1989). Moreover, contrary to defendant's suggestion, the RICO service provision, 28 U.S.C. § 1965, which provides for national service of process, may well provide for extraterritorial service of process. *See In Re: All Terrain Vehicles Litigation,* Civ. No. 88–237 (VanArtsdalen, J.), slip op. at 17–21, 1989 WL 30948 (E.D.Pa. Feb. 23, 1989) (Pltfs' mem. at A). Nevertheless, in view of the Court's discussion of the defendant's minimum contacts with Connecticut and Pennsylvania, the Court need not reach these issues.

named as a defendant, filed a cross-claim seeking indemnification from Asahi.

A plurality of the Supreme Court concluded that the state court's exercise of personal jurisdiction over Asahi contravened Due Process. The Court addressed both prongs of the Due Process analysis, finding insufficient minimum contacts, 480 U.S. at 113, 107 S.Ct. at 1032, and finding that requiring Asahi to defend in California would be unfair. *Id.* at 116, 107 S.Ct. at 1034. As to the first prong, the Court wrote "[t]he substantial connection [ ] between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum state.*" *Id.* at 112, 107 S.Ct. at 1032. The Court wrote that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* The Court noted that further conduct which indicates an intent or purpose to serve the market in the forum state is needed for the exercise of jurisdiction. *Id.* Such conduct might include designating the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. *Id.* In the Asahi case, however, the Court found specifically that "[t]here is no evidence that Asahi designed its product in anticipation of sales in California." *Id.* at 113, 107 S.Ct. at 1032.

■ With this background in mind, the Court turns to defendant's motion. When faced with a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie showing, through affidavits and other supporting materials, that the assertion of jurisdiction is permissible and appropriate. *Ice Cream Unlimited v. Good Humor Corp.,* Civ. No. H–88–684 (AHN), slip op. at 3, 1990 WL 264709 (D.Conn. Oct. 29, 1990) (citing *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981)). A motion to dismiss for lack of personal jurisdiction is, nevertheless, a test of plaintiffs' proof. *Bowman v. Grolsche Bierbrouwerij B.V.,* 474 F.Supp. 725, 728 (D.Conn.1979).

■ Here, plaintiffs have made a showing which indicates that Source Perrier is situated more akin to the national distributor and international manufacturer discussed in *dicta* in *Volkswagen* than the defendant addressed in the *Asahi* case. Plaintiffs have offered evidence indicating that defendants sold millions of containers of bottled water in the United States. Malone Decl. at Exh. D. Perrier water is available in all fifty states. *Id.* Furthermore, plaintiffs' evidence describes that Source Perrier designed containers of Perrier water specifically for U.S. markets, bearing liquid ounce markings, rather than metric measures. Malone Decl. at Exh. H. Moreover, the containers' design is the subject of U.S. registered trademarks. *Id.* Finally, plaintiffs have offered evidence from which it might be determined that Source Perrier created the distribution chain for U.S. sales, Malone Decl. at Exh. D, and that Source Perrier directed the February recall in the United States, as well as the subsequent remarketing effort. Malone Decl. at Exh. G. Source Perrier also had a role in providing information in response to customer inquiries. *Id.* Accordingly, plaintiffs have offered evidence indicating that Source Perrier took extensive, affirmative steps to send its product into all fifty states. Unlike Asahi, Source Perrier designed its product specifically for the U.S. market, which, of course, includes Pennsylvania, and Connecticut. *Compare Asahi,* 480 U.S. at 112–13, 107 S.Ct. at 1032–33. Certainly, Source Perrier delivered its product into the stream of commerce expecting it to reach consumers in these states, and indeed, aided in the delivery of its product thereto. *See World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567–68. For all of these reasons, the Court finds that Source Perrier engaged in sufficient contacts with Pennsylvania and Connecticut to support the exercise of personal jurisdiction by the courts of those states over this defendant. *In Re: All Terrain Vehicles Litigation,* Civ. No. 88–237

(VanArtsdalen, J.), slip op. at 17–21, 1989 WL 30948 (E.D.Pa. Feb. 23, 1989) (Pltfs' mem. at A). Additionally, for all of these reasons, and absent any argument to the contrary, the Court also finds it reasonable to require Source Perrier to defend these matters here. Defendant's challenge to this Court's personal jurisdiction is thus without merit.

### [2] The Central District of California Complaint

 Defendant also seeks to dismiss the claims made in the complaint lodged in the Central District of California against "Perrier, Inc., a French Corporation," "Perrier, Inc.," "The Perrier Group of America" and "Great Waters of France, Inc. Distributors." Defendant claims that none of these entities exist.

To the extent that plaintiffs in this action have erroneously identified each defendant's registered corporate name, the Court notes that defendant has submitted no authority to support its suggestion that such a shortcoming constitutes grounds for dismissal. Although defendant has complied with the provisions of Fed.R.Civ.P. 9(a),[6] defendant has not demonstrated that the sanction of dismissal is an appropriate remedy for plaintiffs' alleged mistakes. Moreover, in response to defendant's motion, plaintiffs have requested the opportunity to conduct discovery on this issue. Pltfs' mem. at 4 n. 2. For these reasons, and as defendant has not alleged any prejudice stemming from any mistaken identification, defendant's motion in this respect is denied without prejudice to renewal. The Court encourages plaintiffs to seek leave to amend their complaint to identify the defendants correctly, if, in fact, they have not so identified the defendants.

### CONCLUSION

For the reasons set forth above, Source Perrier's motion to dismiss the complaint for lack of personal jurisdiction is DE-NIED, and its motion to dismiss as to certain defendants named in the complaint lodged in the Central District of California is DENIED without prejudice.

SO ORDERED.

---

6. Fed.R.Civ.P. 9(a) provides, in pertinent part, "[w]hen a party desires to raise an issue as to the legal existence of any party ... the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."