TOMRA OF NORTH AMERICA,
INC., Plaintiff,

v.

ENVIRONMENTAL PRODUCTS CORP.,
Defendant/Counterclaimant,

v.

TOMRA SYSTEMS ASA and Tomra of
North America, Inc., Counterclaimed
Defendants.

No. 3:97CV1377(GLG).

United States District Court,
D. Connecticut.

March 31, 1998.

J. Daniel Sagarin, Elias A. Alexiades, Hurwitz & Sagarin, Milford, CT, Walter F. Garigliano, Monticello, NY, for Plaintiff.

Everett E. Newton, Francis J. Brady, Murtha, Cullina, Richter & Pinney, Hartford, CT, Robert D. Litowitz, Lisa F. Peller, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, Grant H. Miller, Jr., Law Offices of Grant H. Miller, Jr., West Hartford, CT, Timothy J. Duggan, Duggan, Caccavaro & Ciapciak, Norwood, MA, for Defendant.

### Memorandum Decision

GOETTEL, District Judge.

This is a trade dress infringement action brought under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, by Tomra of North America, Inc. ("TNA"), against Environmental Products Corporation ("Envipco"). TNA charges Envipco with misappropriation of its trade dress for its reverse vending machines.[1] Envipco and TNA are major competitors in the sale of reverse vending machines throughout the United States.

Envipco answered the complaint and counterclaimed against TNA and its Norwegian parent corporation, Tomra Systems ASA ("Tomra"), seeking a declaratory judgment that the "Tomra trade dress" does not qualify for trade dress protection. In response, counterclaimed-defendant Tomra filed a Fed. R.Civ.P. 12(b)(2) motion to dismiss, asserting lack of personal jurisdiction. For the reasons discussed below, we deny Tomra's motion to dismiss without prejudice to its being renewed at a later date.

### Discussion

*Envipco's Prima Facie Burden*

Lack of personal jurisdiction is properly raised by a motion to dismiss. *In re Perrier Bottled Water Litigation,* 754 F.Supp. 264, 268 (D.Conn.1990). When a defendant challenges personal jurisdiction by a motion to dismiss, the burden is on the plaintiff, in this case Envipco, to prove personal jurisdiction. *Metropolitan Life Insur. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996). Because the parties have not yet engaged in jurisdictional discovery and because an evidentiary

---

1. Reverse vending machines, also known as bottle and can redemption machines, are self-service machines that accept beverage containers and return deposits paid on the containers.

hearing has not been held, Envipco is required only to make a prima facie showing of personal jurisdiction. *See A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir.1993); *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 196 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir.1986); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). At this preliminary stage in the litigation, Envipco's prima facie burden may be met by good faith allegations in the pleadings. *Metropolitan Life*, 84 F.3d at 566; *Ball*, 902 F.2d at 197.

Tomra argues that Envipco has not met this burden in that it nowhere alleges that Tomra transacted business in Connecticut[2] or that it is otherwise subject to jurisdiction under Connecticut's long-arm statute.

For purposes of ruling on Tomra's motion to dismiss, we accept as true the allegations in Envipco's counterclaim, and must resolve all factual disputes in Envipco's favor. *CutCo Indus.*, 806 F.2d at 365; *see also* 5A Wright & Miller, *Federal Practice & Procedure* § 1351 (1997 Supp.); 2 Moore's Federal Practice 3d § 12.31[5] (1997).

### *The Jurisdictional Allegations*

In its counterclaim, Envipco alleges that Tomra, a Norwegian corporation with its principal place of business in Norway, is the owner of the trade dress at issue. It asserts that TNA, a domestic corporation "related" to Tomra, has its principal place of business in Connecticut and holds itself out as licensed to use the intellectual property rights of Tomra throughout the United States. No other jurisdictional facts are alleged.

Because of the interrelationship between the declaratory judgment action and the trade dress claims in the original complaint, we also consider the allegations concerning Tomra in TNA's complaint. TNA states that Tomra, as the parent of TNA, manufactures all of the reverse vending machines that TNA exclusively markets, sells, leases, and distributes throughout North America. TNA states that, for over twenty-five years, Tomra has engaged in the manufacture and sale of high quality reverse vending machines, and that these machines have been marketed and sold in interstate commerce in the United States since at least 1986. TNA asserts that Tomra is the largest manufacturer of reverse vending machines sold in the United States and around the world, and that TNA is the leader in sales of reverse vending machines to supermarkets in the United States.

### *Jurisdiction in a Federal Question Case*

In this case, the court's jurisdiction is based upon the existence of a federal question under the Lanham Act.[3] The Lanham Act does not provide for national service of process. *See Hershey Pasta Group v. Vitelli–Elvea Co.*, 921 F.Supp. 1344, 1346 (M.D.Pa.1996). In a federal question case involving a foreign defendant, where the federal statute does not provide for national service of process, a federal court must apply the forum state's personal jurisdiction rules. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). Thus, in this case, we look to the law of Connecticut, which applies a two-tiered approach to determining whether personal jurisdiction exists over a foreign corporation. First, the court must determine whether the appropriate state long-arm statute reaches the foreign corporation. Second, the court must determine whether such statutory reach offends the constitutional due process requirements of minimum contacts and reasonableness. *See Apolinario v. Avco Corp.*, 561 F.Supp. 608, 610 (D.Conn.1982); *Thomason v. Chemical Bank*, 234 Conn. 281, 295, 661 A.2d 595 (1995). The question of whether personal jurisdiction may be imposed turns on the facts of each case. *Eutectic Corp. v. Curtis Noll Corp.*, 342 F.Supp. 761, 762 (D.Conn. 1972).

---

**2.** Tomra incorrectly assumes that Envipco is relying on Conn.Gen.Stat. § 33–929(e), formerly section 33–411(b). *See* Note 5, *infra*. As discussed below, Envipco relies instead on section 33–929(f)(3).

**3.** Pursuant to 28 U.S.C. § 1331, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Pursuant to 28 U.S.C. § 1338, federal district courts have "original jurisdiction of any civil action arising under an Act of Congress relating to ... trade-marks."

*Connecticut's Long–Arm Statute*

Envipco relies on Connecticut's long-arm statute, Conn.Gen.Stat. § 33–411(c)(3), as the basis for this court's jurisdiction over Tomra. That section was repealed effective January 1, 1997, and a new section 33–929(f)(3), using identical language, was enacted.[4] Section 33–929(f)(3) provides in relevant part that

> (f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person[5] having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: ... (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers.....

TNA alleges that Envipco is registered to do business in the state of Connecticut with its place of business in Naugatuck, Connecticut. Accordingly, because Envipco has a usual place of business in the state, subsection (f) provides an avenue for jurisdiction for claims brought by Envipco.

■ Section 33–929(f), unlike section 33–929(e),[6] does not require that a party transact business within the state to be subject to suit nor does it require a causal connection between the plaintiff's cause of action and the defendant's presence in the state. *Thomason v. Chemical Bank*, 234 Conn. at 295–97, 661 A.2d 595; *Lombard Bros., Inc. v. General Asset Management Co.*, 190 Conn. 245,

253–54, 460 A.2d 481 (1983). It requires only "a nexus between the cause of action alleged and the conduct of the defendant within the state." *Whelen Engineering Co. v. Tomar Electronics, Inc.*, 672 F.Supp. 659, 661–62 (D.Conn.1987) (finding that a foreign manufacturer who distributed its products exclusively through a third-party retailer was subject to jurisdiction under Connecticut's long-arm statute in a trademark infringement case); *Fuehrer v. Owens–Corning Fiberglas Corp.*, 673 F.Supp. 1150, 1155 (D.Conn.1986); *Spahl v. Raymark Industries*, No. CV 9550359, 1996 WL 798746 at *1 (Conn.Super. Sept.9, 1996). Furthermore, under section 33–929(f)(3), the fact that the foreign corporation's only contact with the state is through an independent contractor or distributor does not bar personal jurisdiction. *See Whelen Engineering, supra; Natale v. Development Associates, Inc.,* No. CV–92–67349–S, 1993 WL 284676 at *4 (Conn.Super. July 23, 1993). Rather, the requirement of subpart (c) is that the foreign corporation produce, manufacture, or distribute goods with the reasonable expectation that they will be used or consumed in Connecticut. Under this section, consistent with the constitutional demands of due process, it is the totality of the party's conduct and its connection with Connecticut that must be considered on a case-by-case basis to determine whether that party should have reasonably anticipated being haled into court in Connecticut. *Thomason v. Chemical Bank*, 234 Conn. at 291–92, 661 A.2d 595; *Frazer v. McGowan*, 198 Conn. 243, 249, 502 A.2d 905 (1986).

■ From the pleadings alone, there are sufficient facts to support a prima facie case of personal jurisdiction against Tomra. The pleadings state that Tomra manufactured all of the reverse vending machines that were

---

**4.** Section 33–929(f) was previously section 33–929(e).

**5.** Conn.Gen.Stat. § 33–602(18) defines "person" to include individuals and entities. "Entity" is defined as including, *inter alia*, corporations and foreign corporations. Conn.Gen.Stat. § 33–602(11).

**6.** Section 33–929(e), which is substantively the same as the former section 33–411(b), provides that:

> Every foreign corporation which transacts business in this state in violation of section 33–920, as amended by section 29 of this act [requiring foreign corporations to obtain a certificate of authority before transacting business in the state], shall be subject to suit in this state upon any cause of action arising out of such business.

marketed throughout the United States by its subsidiary TNA; tl at Tomra is the largest manufacturer of such machines sold in the United States; and that its machines have been sold in interstate commerce in the United States for twelve years. TNA, its exclusive distributor in the United States, has its principal place of business in Connecticut. Envipco further alleges that Tomra owns the trade dress that is at issue in both the underlying action and the declaratory judgment counterclaim. It defies common sense to suggest that Tomra would not reasonably anticipate that some of its reverse vending machines would be sold and marketed in Connecticut over this twelve year period. Thus, we find that there is a sufficient basis for invoking long-arm jurisdiction under section 33–929(f)(3) and finding that Tomra is amenable to service of process.

In *Noon v. Calley and Currier Co.*, No. CV93 521514S, 1995 WL 118387 (Conn.Super. Mar. 9, 1995), the court held that a Korean manufacturer of fasteners, which never sold its products directly to customers in Connecticut, never shipped any products to Connecticut, and had no offices or manufacturing facilities in Connecticut, was nevertheless subject to suit under Connecticut's long-arm statute, Conn.Gen.Stat. § 33–411(c)(3) (the predecessor to section 33–929(f)(3)), based upon its sales to a nationwide distributor of the fasteners. The court noted that, while it might be true that the Korean company may not have known specifically which states were receiving their fasteners, certainly with their distributor having such a vast sales distribution of their product, it was reasonable to infer that they must have known that their products would be used in Connecticut.[7] 1995 WL 118387 at *3. *See also Coates v. Rolscreen Co.*, No. 91–

330146, 1993 WL 541630 (Conn.Super. Dec. 15, 1993) (holding that section 33–411(c)(3) reached a foreign manufacturer of windows, which it sold in Connecticut through two independent distributors).

*Fifth Amendment Due Process Requirements*

Having found sufficient allegations in the pleadings to meet the requirements for personal jurisdiction under Connecticut's long-arm statute, we turn to the second prong of the jurisdictional analysis, which requires us to determine whether the exercise of jurisdiction over Tomra would violate the due process clause. The due process requirement for personal jurisdiction protects a person or entity without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction. *Metropolitan Life*, 84 F.3d at 567. Because our jurisdiction in this case is based upon the existence of a federal question, the due process requirements derive from the Fifth Amendment to the Constitution, rather than the Fourteenth. *Aerogroup International Inc. v. Marlboro Footworks, Ltd.*, 956 F.Supp. 427, 439 & n. 16 (S.D.N.Y.1996). The same general due process principles of "minimum contacts" and "reasonableness" found in cases based upon diversity jurisdiction, however, apply to actions premised on the existence of a federal question. *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 283 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981).

A two-step analysis is used to determine whether the exercise of personal jurisdiction would offend the requirements of due process. First, the court must determine whether the defendant has minimum contacts with the forum.[8] If so, the second question

---

7. The court in *Noon*, however, held that the due process requirement of minimum contacts had not been met and, therefore, personal jurisdiction could not be exercised over the Korean manufacturer.

8. In a diversity action, the appropriate inquiry is the extent of the defendant's minimum contacts with the forum state. *Arrowsmith v. United Press International*, 320 F.2d 219, 231 (2d Cir.1963). In a federal question case, however, there is support for the proposition that the relevant inquiry is the defendant's contacts with the nation

as a whole. *See In re Perrier Bottled Water Litigation*, 754 F.Supp. at 267 n. 5; *Kohler Co. v. Titon Industries, Inc.*, 948 F.Supp. 815, 819 (E.D.Wis. 1996); *Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir.1991). This is particularly true in light of the 1993 amendments to Rule 4 of the Federal Rules of Civil Procedure. Rule 4(k)(2) was enacted to correct

a gap in the enforcement of federal law. Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United

that must be addressed is whether the assertion of jurisdiction comports with the traditional notions of fair play and substantial justice, that is, whether it is reasonable under the circumstances of the particular case. *In re Perrier Bottled Water Litigation,* 754 F.Supp. at 267 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The two components of the due process inquiry are related inasmuch as both stem from the principle that a court cannot subject a person to its authority where the maintenance of the suit would offend "traditional notions of fair play and substantial justice." *Metropolitan Life,* 84 F.3d at 568 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *see also Bensmiller v. E.I. Dupont De Nemours & Co.,* 47 F.3d 79, 84 (2d Cir.1995).

In assessing Tomra's minimum contacts with Connecticut, we are required to determine whether there has been some act by Tomra by which it has purposely availed itself of the privilege of conducting activities within the forum state. *See Ensign–Bickford Co. v. ICI Explosives USA Inc.,* 817 F.Supp. 1018, 1029 (D.Conn.1993) (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)).

In *World–Wide Volkswagen Corp.,* 444 U.S. at 297, the Supreme Court indicated that exercising jurisdiction over an international manufacturer of goods would be consistent with due process where the defendant purposefully catered to a national market, distributing its products across the country through its own efforts or through the efforts of a middleman. The Court noted that the exercise of personal jurisdiction over a foreign corporation is proper if the corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."

*Id.* at 298. In *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court further elaborated on the "stream of commerce" issue. A plurality of the Court concluded that, the mere placing a product in the stream of commerce, without more, was not an act purposefully directed to the forum state so as to satisfy the requirements of due process. *Id.* at 112. The Court noted, however, that the due process requirements could be met through further conduct, including designing the product for the forum's market, advertising in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. *Id.*

■ In this case, Tomra is alleged to be the largest manufacturer of reverse vending machines sold in the United States, all of which were sold through its Connecticut subsidiary. This is not a situation where Tomra manufactured only a minor component part of a larger product, having no idea where the finished product would be sold; *see Noon v. Calley and Currier Co., supra;* nor is it a situation where the plaintiff's unilateral action brought the defendant's products into the forum state. *See World–Wide Volkswagen,* 444 U.S. at 297 (finding insufficient contacts where the only connection between the defendant and the forum was the consumer's decision to transport the product into the forum's state). Here, Tomra reasonably should have anticipated that its products would reach Connecticut on a regular basis and, thus, should have foreseen being haled into court in this forum.

Indeed, in applying Conn.Gen.Stat. § 33–929(f)(3) the Connecticut courts have held that if the defendant knew or reasonably should have known that its product would find its way into the stream of commerce in

States sufficient to justify application of United States law and to satisfy the federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state long-arm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction.
Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 4. These notes have been interpreted as indicating that the "national contacts" test should be applied in federal question cases involving defendants which are not United States residents. *Kohler Co.,* 948 F.Supp. at 820. Neither party, however, has addressed this issue, and, in view of our finding that there are minimum contacts with the forum state, we need not reach this issue.

Connecticut, then it would not be unreasonable for it to expect to defend an action in Connecticut. *Farinella v. Sieman's Corp.*, No. 533344, 1996 WL 477153 (Conn.Super. Aug. 7, 1996); *Natale v. Development Associates, Inc., supra; Coates v. Rolscreen Co., supra; Sheridan v. Cadet Chemical Corp.*, 25 Conn.Supp. 17, 21, 195 A.2d 766, 768 (Super.Ct.1963).

In the instant case, we find that the court's exercise of personal jurisdiction over Tomra is consistent with due process requirements. Under Asahi, given the fact that Tomra's exclusive distributor for its finished products was in Connecticut, we find that a prima facie showing has been made that Tomra had sufficient "minimum contacts" with the state of Connecticut for due process purposes. *See Metropolitan Life,* 84 F.3d at 573; *Ensign–Bickford,* 817 F.Supp. at 1030.

■ The second prong of the due process analysis is the "fairness" or "reasonableness" test in which this court must assess whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* This requires an evaluation of the factors set forth in *Asahi,* 480 U.S. at 113–16, including the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief.

Because the parties distributed their reverse vending machines on a nationwide basis, the trade dress issue would seemingly affect all jurisdictions in which their machines were sold. Thus, Connecticut would have an interest in this matter. Additionally, because TNA has its principal place of business in Connecticut and Envipco maintains a place of business here, if not its principal place of business, Connecticut would have a significant interest in having the trade dress infringement matter decided here.

Undoubtedly, many of the witnesses and documents relating to the trade dress issue will be located in Connecticut. While Tomra, a Norwegian company, will presumably be burdened by having to defend a lawsuit anywhere in the United States, because Connecticut is home to its subsidiary corporation and the sole distributor of its products, this burden should be lessened if the suit were maintained in Connecticut.

We find that maintaining this suit in Connecticut against Tomra will not offend the notions of fair play and reasonableness. Tomra can fairly be required to defend itself here, particularly in a n action that seeks to determine the scope of its trade dress rights on machines of its own design and manufacture. *See Whelen Engineering,* 672 F.Supp. at 664.

### Conclusion

Based upon the information set forth in the pleadings, we find that our exercise of personal jurisdiction over Tomra is proper under Connecticut's long-arm statute and comports with the due process requirements of the Fifth Amendment. Accordingly, we DENY Tomra's Motion to Dismiss the Counterclaim [**Doc. # 24**]. We reiterate, however, that at this stage of the proceedings, Envipco's burden was only to make a prima facie showing of personal jurisdiction, a burden which we find it has sustained. Ultimately, however, Envipco bears the burden of establishing jurisdiction by a preponderance of the evidence. *Soviet Pan Am Travel Effort v. Travel Committee, Inc.,* 756 F.Supp. 126, 130 (S.D.N.Y.1991). Accordingly, in denying Counterclaimed-defendant Tomra's Motion to Dismiss for lack of personal jurisdiction, we do so without prejudice to its renewal at a later date after additional discovery.

**SO ORDERED.**